PHYSICIAN EMPLOYMENT AGREEMENT
(NON-HOSPITAL SETTTING) –NEW PROVIDER

**THIS PHYSICIAN EMPLOYMENT AGREEMENT** (the "Agreement") is made and entered into this _12 th_ day of March, 2012 by and between Saint Vincent Medical Educational and Research Institute, Inc., a Pennsylvania professional corporation d/b/a Saint Vincent Medical Group ("Employer"), and Jay J. Kiessling, MD ("Physician").

## RECITALS

**WHEREAS**, Employer is engaged in the business of operating and managing medical practices and other health care services in Erie County, Pennsylvania (the "County");

**WHEREAS**, Physician is a board certified licensed physician specializing in Vascular Surgery; and

**WHEREAS**, Employer desires to employ Physician, and Physician desires to be employed by Employer, to render professional physician services in accordance with the terms and conditions specified herein.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual promises and conditions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employer and Physician, intending to become legally bound, agree as follows:

## ARTICLE I
## ENGAGEMENT

1.1     Employer engages Physician, and Physician accepts such engagement, as a physician primarily at the medical practice office located at 2315 Myrtle Street, Suite 160, Erie, PA (the "Practice") and such other sites as may be reasonably designated by Employer from time to time, to render Vascular Surgery physician services to patients, in accordance with the terms and conditions of this Agreement.

## ARTICLE II
## TERM

2.1     **Term.** The Agreement term initially shall be for thirty-eight (38) months (the "Agreement Term"), commencing on the Effective Date, defined below, and continuing until June 30, 2015 subject to earlier termination of this Agreement pursuant to Article VI [Termination] hereof. The Effective Date means the date that Physician begins providing physician services for Employer pursuant to this Agreement, which date shall be May 1, 2012 conditional upon timely, complete and accurate submission by Physician of all required Saint Vincent Health Center and payor credentialing forms and documentation.

## ARTICLE III
## DUTIES AND SERVICES

3.1     **Work Schedule.** During the Agreement Term, Physician agrees to devote his/her full professional working time and attention, for a minimum of forty (40) hours per work week, to the practice of medicine for the benefit of Employer under the terms of this Agreement. Employer shall establish Physician's work schedule and on-call schedule, which schedule shall be inclusive of hours providing patient care at the facilities of Employer, any and all medical staff obligations, and administrative duties.

3.2     **Non-Physician Personnel.** Employer will provide Physician with a reasonable amount of non-physician personnel including, but not limited to, nurses, technicians, secretarial staff, and other medical and non-medical personnel, to assist Physician in the performance of his/her duties. Physician shall report to, consult with, and use the input of Employer regarding the hiring and firing of medical staff who work within the Practice and the overall

operations of the Practice. All final decisions regarding hiring and firing of Practice personnel shall rest with Employer.

**3.3     Availability and Duties.** Physician shall be responsible for such duties as assigned to him or her from time to time by Employer. Physician shall make himself or herself available to provide Vascular Surgery services to, and treat patients of Employer, whether such patients are outpatients or inpatients. Physician hereby agrees to devote his/her full working time and attention, together with Physician's best endeavors and skill, for the interest, benefit and best advantage of Employer and shall provide services on behalf of Employer in a manner that shall maintain the productivity of the Practice. Physician shall provide all professional medical services in accordance with the policies and procedures established by Employer, and the appropriate standards of care of the community. Physician shall have the authority to refuse to treat a specific patient or to dismiss any particular patient if the patient has been abusive, disruptive or threatening or has refused to comply with Physician's orders, or for other reasons of a similar nature. In the case of any such dismissal, Physician agrees that appropriate notice by certified letter shall be sent to such patient, and emergency care shall be provided by Physician to such patient for an appropriate period after such dismissal. Notwithstanding the foregoing, Physician agrees that he or she will not refuse to treat a patient and will not discriminate with respect to quality of care of a patient or otherwise on the basis of such patient's race, color, national origin, ancestry, religion, sex, marital status, sexual orientation, age, disability or medical condition, or as otherwise provided by law. Except as otherwise stated herein, Physician specifically understands that Employer shall have the final authority over the acceptance or refusal of any person for whom professional services may be rendered and the amount of fees to be charged to such patients.

**3.4     Patient Care.** Nothing in this Agreement shall be interpreted as dictating Physician's practice of medicine, delivery of direct patient care or independent judgment in the practice of medicine. Physician shall have complete control over the diagnosis and treatment of patients, and neither Employer nor any employee of Employer shall exercise any direct supervision or control over the individual treatment of a patient. Physician agrees that Physician's treatment and diagnosis of patients will be consistent with any rules and regulations promulgated by Employer dealing with the general treatment of patients.

**3.5     Ethical and Religious Directives.** Physician shall conduct his/her professional practice in a manner that is consistent with the Ethical and Religious Directives for Catholic Health Care Services. Copies are available from Employer.

**3.6     Performance Standards.** In performing services under this Agreement, Physician shall comply with the following performance standards:

3.6.1    promote cooperation and teamwork among other physicians and other employees and personnel of Employer;

3.6.2    develop standardization of Vascular Surgery practices and procedures;

3.6.3    attend all required management meetings;

3.6.4    assist Employer as requested in the efficient and effective day to day management of the Practice;

3.6.5    respond to patient and referring physician needs and concerns regarding patient diagnosis and treatment as expeditiously as reasonably possible;

3.6.6    fully support Employer's overall quality improvement and quality assurance initiatives;

3.6.7    adhere to all reasonable policies and procedures adopted by Employer;

3.6.8    share Vascular Surgery call coverage with other Vascular Surgery providers;

3.6.9    adhere to such other performance standards as may be established by Employer from time to time.

3.7    **Location(s) for Services.**  Physician shall perform his/her duties at the Practice and such other practice locations of Employer as may be reasonably designated by Employer from time to time.  Employer shall have reasonable discretion to consolidate and relocate any medical practice operated by Employer, including the Practice. Additionally, Physician agrees to apply for and maintain active staff privileges at Saint Vincent Health Center throughout the term of this Agreement and to meet and maintain the requirements for the granting of such privileges. Physician shall admit patients requiring inpatient and outpatient services exclusively to Saint Vincent Health Center unless (a) a patient's medical condition needs are better met by another hospital, or (b) a patient or a patient's family requests referral to another hospital.

3.8    **Professional Fees/Outside Activities.**  Physician agrees not to engage in any medical professional business activity (whether or not such business activity is pursued for gain, profit or other pecuniary advantage), without the prior written consent of Employer, other than (i) rendering services on behalf of Employer pursuant to this Agreement, or (ii) teaching, writing, lecturing, or providing expert witness testimony on medical topics; provided such activities shall not interfere or conflict with the performance of Physician's duties or provision of services under this Agreement.  For those services described in 3.8 (ii) and those extra-contractual activities receiving prior written consent of Employer, Employer shall not be obligated to extend the malpractice coverage otherwise provided in Article V.  In the event that intellectual property is created in whole or in part in connection with services described in 3.8, such intellectual property shall become subject to the Saint Vincent Health System Interdepartmental Policy on Intellectual Property  Employer, on a case-by-case basis and with the assent of Physician, may exclude any remuneration Physician receives as a result of such other medical professional business activity from the calculation of Physician Compensation (as hereinafter defined).  Physician shall not enter into any other employment contract or otherwise engage in the practice of medicine other than for the benefit of Employer.  All remuneration and accounts receivable arising from or related to Physician's provision of any medical services pursuant to this Agreement are the property of Employer, and Physician agrees to provide to Employer any such remuneration immediately after it is received by Physician. Physician agrees to take all reasonable actions requested by Employer to assist in the collection of accounts receivable for services provided by Physician.  Unless otherwise agreed, all fees or remuneration arising from or related to teaching assignments, lectures, speeches, publications, or expert witness testimony by Physician on or about matters related to the practice of medicine shall also be considered compensation or professional service revenues to which Employer is entitled hereunder.

3.9    **Workplace Rules.**  Physician shall observe and comply with the rules, regulations, policies and procedures established by Employer with respect to the performance of Physician's duties.  In the event of any inconsistency between such rules, regulations, policies and procedures and this Agreement, the provisions of this Agreement shall prevail.

3.10    **Managed Care.**  Physician shall complete/submit all necessary credentialing documentation which will enable Physician to participate in all managed care arrangements made available by or through Employer at least sixty (60) days prior to the Effective Date and within fifteen (15) days of all subsequent requests.  Employer shall have the sole and exclusive right and authority to enter into contractual relationships with HMOs, IPAs, PPOs, PHOs, employer groups, provider networks and other managed care organizations and third party payors.  Physician shall not otherwise contract with any managed care organization or third party payor.  In connection with such managed care arrangements, Employer shall negotiate such managed care arrangements with the provision that Physician shall not be individually responsible to the managed care company for any withholding and that no hold harmless provision shall be applicable to, or enforceable upon, Physician.  Employer shall use reasonable efforts to ensure that any capitation rates, discounted fees or other risk based arrangements are consistent and competitive with the rates accepted by other physicians practicing in Physician's specialty in the County.

3.11    **Other Services.**  During the Agreement Term, Physician and Employer may mutually agree to Physician's rendering additional services.  Such duties may include service on hospital staff committees, peer review organizations, or other committees of Employer, and serving on national and regional committees of Employer's Affiliates (which term as used in this Agreement shall include any person, corporation, partnership, general partner or

other entity that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with Employer); provided that such duties shall not interfere with the professional services provided by Physician on behalf of Employer pursuant to this Agreement.

ARTICLE IV
COMPENSATION

4.1     **Compensation.** During the Agreement Term, Employer shall pay Physician compensation as set forth on Exhibit "A" ("Physician Compensation").

4.2     **Benefits.** Employer shall provide Physician with medical benefits for Physician and Physician's beneficiaries that are comparable to the coverage available, from time to time, to the other physician employees of Employer. Employer will provide life, disability, and dental benefits for Physician on similar terms as the other physician employees of Employer.  Employer's life insurance company may require Physician to satisfactorily pass a physical examination to issue a life insurance policy to Physician.  Physician shall be entitled to participate in Employer's retirement and other benefit plans as offered from time to time at a level commensurate with the retirement benefits offered to other physician employees of Employer.  Exhibit B details the current benefit package, which is subject to change annually.

4.3     **Time Off.**  Full-time physicians shall be entitled to 256 hours of leave for each 12-month period beginning on July 1 of each year following the Effective Date.  Time off for part-time physicians shall be calculated based on the proportional percentage of a full-time physician's time off allotment.  Specifically, the part-time employee's scheduled work hours are calculated as a percentage of full-time scheduled work hours.  This percentage is then multiplied by the full-time allotment of 256 hours to determine the part-time physician's annual time off.  Such number of hours shall be inclusive of all of Physician's vacation, sick time, holiday, and CME leave from the Practice.  If the Effective Date is any date other than July 1, time off shall be prorated from the Effective Date through the following June 30.  No financial value shall be attributed to such hours.  Physician may take time off from work at such times and dates as are mutually agreeable to both Physician and Employer.  All leave must be pre-approved by Employer; however, Employer shall not unreasonably withhold its consent from any request for leave from Physician if advance notice is given.  Upon expiration or termination of this Agreement at any time, there will be no balance of vacation, holidays, personal days, sick days, etc. to which Physician can claim entitlement.

4.4     **Additional Assistance.**  Employer shall provide to Physician the following additional assistance as set forth in this Section 4.4 ("**Additional Assistance Payments**").  Such Additional Assistance Payments shall be considered an advance to Physician and shall accrue interest, from the date paid by Employer until and including the date repaid or forgiven, at a rate equal to the prime rate reported in the Wall Street Journal on the Effective Date, plus one percent (1%).  Additional Assistance Payments, including accrued interest, shall be repaid or forgiven as set forth in Section 4.5.

     (a)     <u>Moving Expenses</u>.  Employer shall pay Physician $10,000 for Physician's expenses incurred in moving to the Community.

     (b)     <u>Recruitment Incentive Payment</u>.  Employer shall pay to Physician a one-time recruitment incentive payment in the amount of $15,000 payable 50% upon the later of (i) Physician's compliance with the licensure requirements under Section 7.1 or (ii) the execution of this Agreement; and the remaining 50% upon the successful completion of Physician's credentialing at Saint Vincent Health Center.

4.5     **Repayment and Forgiveness.**  All outstanding Additional Assistance Payments shall be repaid or forgiven pursuant to this Section 4.5.

     (a)     Physician shall repay Additional Assistance Payments, plus interest, over the 36 month period (the "**Forgiveness Period**") beginning the month after the Effective Date.  Such repayments shall occur pursuant to an amortization schedule with a number of months equal to the number of months in the

Forgiveness Period. The interest accumulated after payment by Employer shall be added to this amortization schedule on a pro rata basis; provided, however, that for each full month of the Forgiveness Period that Physician continues to meet the terms of this Agreement, the monthly amount due pursuant to this Section, plus a percentage of the accumulated interest outstanding equal to 1 over the number of months in the Forgiveness Period, shall be forgiven by Employer, and Physician shall be forever relieved of any obligation to repay such amount.

(b)     Accelerated Repayment of Outstanding Amounts Upon Termination. If this Agreement is terminated prior to the natural expiration of its Term, except as otherwise specifically provided in Paragraph 5.5, the then-outstanding balance of Additional Assistance Payments, if any, plus all accumulated interest, shall be repaid by Physician to Employer within sixty (60) days after this Agreement is terminated.

(c)     Promissory Note and/or Security Agreement. All amounts advanced by Employer pursuant to this Article IV shall be evidenced by commercially reasonable loan documents. Such documents shall be in substantially the form of the Promissory Note attached hereto as Exhibit D [*Optional:* and/or the Security Agreement attached hereto as Exhibit E, as applicable].

(d)     Nullification. If Employer terminates this Agreement "for cause" pursuant to Section 6.1.2(a) (Physician's death or permanent disability) or "without cause," pursuant to Section 6.3, then, effective as of the termination date, no repayment of any remaining unpaid Additional Assistance Payments shall be due. Physician's debt relating to any such sums shall be forgiven.

4.6     **Income and Employment Taxes.** Physician shall be an employee of Employer for all purposes. Employer shall withhold amounts from Physician Compensation in accordance with the requirements of applicable law for federal income tax, FICA, FUTA, and other employment or payroll tax purposes. All physician compensation, including but not limited to, base salary and aggregate compensation payments, shall be subject to customary withholding for employment taxes. Amounts of Additional Assistance forgiven, if any, as well as any imputed income as required by law, will be reported to the Internal Revenue Service on Form 1099. It shall be Physician's responsibility to report and pay all federal taxes arising from Physician's receipt of compensation and other income imputed to Physician hereunder.

## ARTICLE V
## INSURANCE

5.1     **Medical Liability Insurance.** Employer agrees directly to pay the premium for Physician's professional medical liability insurance during the Agreement Term with limits required by the Commonwealth of Pennsylvania and with Saint Vincent Health Center medical staff with minimum coverage of One Million Dollars ($1,000,000.00) per claim with a yearly maximum of Three Million Dollars ($3,000,000.00) in the aggregate ("claims made" type policy). Physician shall provide a certificate of insurance as evidence of "tail coverage" for events which occurred prior to the Effective Date of this Agreement. Subsequent to termination, Physician will be provided "tail coverage" at Employer's expense and by Employer's insurance carrier for events which occurred while Physician is employed by Employer pursuant to this Agreement.

## ARTICLE VI
## TERMINATION

6.1     **Termination by Employer "For Cause".** The Agreement Term (including any renewal term) may be terminated prior to its expiration, at the election of Employer, under any of the following circumstances:

6.1.1     Upon written notice to Physician, if Physician is in a material breach, default or violation of any provision of this Agreement and fails to cure such material breach, default or violation to the reasonable satisfaction of Employer within thirty (30) days after notice in writing by Employer to do

EXECUTION COPY

so or within said thirty (30) days to commence such cure and thereafter diligently to prosecute such cure to completion; or

6.1.2   Immediately upon written notice by Employer to Physician (or Physician's estate) for any of the following reasons:

    (a)    Physician's death or permanent disability.  The term "permanent disability" shall be defined as the failure of Physician to perform his/her duties and responsibilities hereunder for a total of ninety (90) days or more, regardless of whether such days are consecutive, during any twelve consecutive months;

    (b)    Physician's license to practice medicine is suspended, revoked or canceled or a restriction or limitation by any governmental authority having jurisdiction over Physician is placed or imposed upon him so that he/she cannot perform the professional services for which he/she was engaged hereunder.

    (c)    Physician is terminated or suspended from Medicare, Medicaid or any successor program;

    (d)    Physician's failure to maintain unrestricted staff membership or privileges on the medical staff of Saint Vincent Health Center;

    (e)    Physician is convicted of a felony or a crime of moral turpitude;

    (f)    Physician conducts himself or herself in a manner that Employer determines to be unethical or fraudulent, is detrimental to patient care, or impairs the reputation or operations of Employer;

    (g)    Upon repeated failure by Physician to meet utilization, performance, efficiency, or quality standards established by Employer;

    (h)    Upon repeated failure by Physician to conform and comply with Employer's professional requirements concerning maintenance of medical records;

    (i)    Upon cancellation of Physician's coverage, or Physician's uninsurability, under the terms and conditions of the professional liability insurance provided by Employer; or

    (j)    Upon the use of alcohol or a controlled substance, which materially impairs the ability of Physician to perform effectively Physician's duties and obligations under this Agreement.

6.2     **Termination by Physician "For Cause."**  The Agreement Term (including any renewal term) may be terminated prior to its expiration, at the election of Physician, under any of the following circumstances:

6.2.1   Upon written notice to Employer, if Employer is in material breach, default or violation of any provision of this Agreement and fails to cure such material breach, default or violation within thirty (30) days after notice in writing by Physician to do so or within said thirty (30) days fails to commence such cure and thereafter diligently to prosecute such cure to completion; or

6.2.2   Immediately upon written notice by Physician to Employer for any of the following reasons:

    (i)    bankruptcy or receivership of Employer; or

    (ii)    revocation or suspension of Employer from the Medicare or Medicaid programs or any successor program.

New - Kiessling          

6.3     **Termination by Employer or Physician "Without Cause".** Employer or Physician may terminate this Agreement, without cause, at any time upon the provision of ninety (90) days' prior written notice to the other party, or by Employer upon sixty (60) days' written notice in the event that Employer revises its standard form agreement for employed physicians and has offered Physician such revised agreement in a manner and form consistent to that offered to Employer's other employed physicians

6.4     .

6.4     **Obligations after Termination.** Upon termination of this Agreement for any reason, Physician Compensation shall immediately cease and Physician (or Physician's estate) shall be entitled to receive only those amounts earned or accrued on services provided by Physician up to the date of termination. Physician's rights to any on-going or continuing benefits shall be determined in accordance with the terms of the applicable benefit plan of Employer.  Termination of this Agreement shall not release or discharge Employer from any obligation, debt or liability to Physician incurred prior to the date of termination of this Agreement.

6.5     **Other Requirements upon Termination.** Upon termination of this Agreement for any reason: (i) Physician's participation in any of Employer's fringe benefit plans shall immediately cease (subject to any post-termination benefits, if any, expressly stated in the then-current plans for such benefits); and (ii) the provisions of Articles VIII, IX, and X hereof shall remain in full force and effect, except as otherwise specifically provided herein. Physician agrees that his/her Medical Staff appointment and privileges are conditioned upon the continuance of the relationship described in this Agreement and that, if this relationship ceases, then his/her appointment and clinical privileges will automatically terminate.

## ARTICLE VII
## REPRESENTATIONS AND WARRANTIES

7.1     Physician represents and warrants at all times during the Agreement Term (including any renewal term) that:

   (a)     Physician is duly licensed and registered and in good standing under the laws of the Commonwealth of Pennsylvania to engage in the practice of Vascular Surgery _medicine, and that said license and registration have not been suspended, revoked or restricted in any manner.

   (b)     Physician is qualified and appointed for membership in good standing on the medical staff of Saint Vincent Health Center.

   (c)     Physician has current controlled substances registrations issued by the Commonwealth of Pennsylvania, United States Drug Enforcement Administration, which registrations have not been surrendered, suspended, revoked, expired or restricted in any manner.

   (d)     Physician has disclosed and will disclose to Employer the following matters, whether occurring at any time during the past five (5) years prior to the date of this Agreement or at any time during the Agreement Term:

      (i)     any actual or threatened malpractice suit, any actual or constructive known claim (whether or not filed in court), settlement, settlement allocation, judgment, verdict or decree against Physician;

      (ii)     any actual or threatened disciplinary, peer review or professional review investigation, proceeding or action instituted against Physician by any licensure board, hospital, medical school, health care facility or entity, professional society or association, third party payor, peer review or professional review committee or body, or governmental agency;

      (iii)     any criminal complaint, indictment or criminal proceeding in which Physician is named as a defendant;

(iv)    any actual or threatened investigation or proceeding, whether administrative, civil or criminal, relating to an allegation against Physician of filing false health care claims, violating anti-kickback laws, violating fee-splitting laws, or engaging in billing improprieties;

(v)    any organic or mental illness or condition that impairs or is likely to impair Physician's ability to practice medicine;

(vi)    any dependency on, or habitual use or abuse of, alcohol or controlled substances, or any participation in any alcohol or controlled substance detoxification, treatment, recovery, rehabilitation, counseling, screening or monitoring program;

(vii)    any actual or threatened allegation, or any investigation or proceeding based on any allegation, against Physician for violating professional ethics or standards, or engaging in illegal, immoral or other misconduct (of any nature or degree), relating to the practice of medicine; and

(viii)    any denial or withdrawal of an application in any state for licensure as a physician, for medical staff privileges at any hospital or other health care entity, for board certification or recertification, for state or federal controlled substances registration, or for malpractice insurance.

(e)    Physician is board certified in General Surgery by the American Board of Surgery.

(f)    Physician shall at all times render services to patients in a competent, professional and ethical manner, in accordance with prevailing standards of medical practice in the relevant community, perform professional and supervisory services in accordance with recognized standards of the medical profession, and act in a manner consistent with the Principles of Medical Ethics of the American Medical Association and all applicable statutes, regulations, rules, orders and directives of any and all applicable governmental and regulatory bodies having competent jurisdiction.

(g)    In connection with the provision of professional services to patients of Employer, Physician shall use the equipment, instruments, pharmaceuticals and supplies furnished by or on behalf of Employer for the purposes for which they are intended and in a manner consistent with sound medical practice.

(h)    Physician shall participate in the Medicare and Medicaid programs, workers compensation, other federal and state reimbursement programs, and the payment plan of any commercial insurer, health maintenance organization, preferred provider organization, accountable health plan, or other health benefit program.

(i)    Physician shall keep and maintain (or cause to be kept and maintained) appropriate records, consistent with prevailing standards of medical practice in Physician's relevant community, relating to all professional services rendered by him or her under this Agreement and shall prepare and attend to, in connection with such services, all reports, claims, and correspondence necessary or appropriate in the circumstances, as determined mutually by Employer and Physician, all of which records, reports, claims, and correspondences shall belong to Employer.

(j)    Physician covenants not to use, or permit any other personnel under the supervision of Physician to use, any part of the premises of Employer for any purpose other than the performance of services hereunder.

(k)     Physician (A) is not currently excluded, debarred, or otherwise ineligible to participate in the Federal health care programs as defined in 42 U.S.C. Section § 1320a-7b(f)(the "Federal health care programs"); (B) is not convicted of a criminal offense related to the provision of health care items or services but has not yet been excluded, debarred, or otherwise declared ineligible to participate in the Federal health care programs, and (C) is not under investigation or otherwise aware of any circumstances that may result in Physician's being excluded from participation in the Federal health care programs.  This shall be an ongoing representation and warranty during the Agreement Term, and Physician shall immediately notify Employer of any change in the status of the representation and warranty set forth in this section.  Any breach of this section shall give Employer the right to terminate this Agreement immediately for cause.

## ARTICLE VIII
## DISCLOSURE OF INFORMATION

8.1     **Custody of Medical Records.**  Physician understands and agrees that during the Agreement Term and thereafter all medical records, patient lists, case records, case histories, x-ray files, or personal or regular files concerning patients of Employer or any of Employer's Affiliates, or patients consulted, interviewed or treated and cared for by Physician, shall belong to and remain the property of Employer.  Upon termination of this Agreement, Physician shall not be entitled to keep original records or preserve records of Employer or any of Employer's Affiliates as to any patient unless the patient shall specifically request a different disposition of his or her records, or copies thereof, and in no event shall Physician be entitled to the records, or copies thereof, of patients not treated by Physician.  Employer agrees at all times, both during and after termination of this Agreement, to maintain and preserve such records in a manner consistent and in compliance with all applicable laws and regulations.  If Employer provides Physician with original patient records pursuant to the terms hereof, Physician shall retain all of such records and, upon Employer's request, shall make such originals available to Employer. If any medical malpractice or other claim, audit or business need of Physician arises and involves records that are retained by Employer pursuant to the terms hereof, Employer agrees to make such original medical records available to Physician, or Physician's designated counsel or representative, for inspection and copying, during regular business hours, in accordance with applicable law.

8.2     **Disclosure of Information.**  Physician recognizes and acknowledges that all records, files, reports, protocols, policies, manuals, databases, processes, procedures, computer systems, materials and other documents pertaining to services rendered by Physician hereunder, or to the operations of Employer, belong to and shall remain the property of Employer and constitute proprietary information and trade secrets of Employer.  Physician recognizes and acknowledges that the terms of this Agreement, as well as Employer's proprietary information and trade secrets as they may exist from time to time, are valuable, special, and unique assets of Employer's business.  Physician shall not, during or after the Agreement Term, disclose such proprietary information of Employer or trade secrets of Employer to any other firm, person, corporation, association or other entity for any reason or purpose whatsoever, or use such information for Physician's own benefit, without the prior written consent of Employer, unless otherwise required to disclose such information in accordance with appropriate judicial process.

8.3     **Injunction.**  Physician acknowledges that the confidentiality restrictions contained in this Article VIII are a reasonable and necessary protection of the legitimate trade secrets and business interests of Employer.  In the event of any violation of these restrictions, Employer shall be entitled to preliminary and permanent injunctive relief, in addition to any other remedy available to Employer at law.  Nothing herein contained shall be construed as prohibiting Employer from pursuing any other legal or equitable remedies available to Employer due to a violation of the restrictions set forth in this Article VIII, including monetary damages and relief.

8.4     **Costs of Enforcement.**  In the event Employer is successful to any extent in enforcing the provisions of this Article VIII against a breaching Physician, Physician shall reimburse Employer all Employer's costs (including but not limited to reasonable attorney's fees) incurred in the enforcement effort.  Such reimbursement shall be in addition to such other relief as the court may award to Employer.

## ARTICLE IX
## COVENANT NOT TO COMPETE

9.1    **Professional Services Restrictive Covenant**. With the exception of the services and duties that Physician performs for Employer or on Employer's behalf pursuant to the terms of this Agreement, Physician agrees that during the Agreement Term and for a period of one (1) year after the termination of the Agreement Term for any reason whatsoever (including expiration), Physician shall not within a fifty (50) mile radius of the Practice, as determined at the time of termination, (the "Restricted Territory") engage in any Vascular Surgery medical practice, or engage in any business or perform any service, directly or indirectly, in competition with the medical services of Employer or any of Employer's Affiliates, or have any interest, whether as a proprietor, partner, employee, shareholder, principal, agent, consultant, director, officer, or in any other capacity or manner whatsoever, in any enterprise that shall so engage in Vascular Surgery services, which is located in, provides services in, or does any business whatsoever within, the Restricted Territory.  By way of example only, and not by way of limitation, the practice restriction in this Section 9.1.1 shall operate to bar Physician from exercising clinical privileges in Vascular Surgery at Hamot Medical Center or any of its affiliates within the Restricted Territory during the Agreement Term and for a period of one (1) year after the termination of the Agreement Term for any reason whatsoever (including expiration).

9.2    **Non-Solicitation Restrictive Covenant**.   Physician further agrees that for a period of time equal to one (1) year after termination of the original Term of this agreement for any reason whatsoever (including expiration), Physician shall not within the Restricted Territory:

      9.2.1    Solicit, serve or accept any business from patients, insurance companies, managed care plans, employers or other customers of the business conducted by Employer, or its Affiliates, for services competitive with those of Employer and/or the Practice, or request, induce or advise patients, insurance companies, managed care plans, employers or other customers of the business conducted by Employer or its Affiliates to withdraw, curtail or cancel their business with Employer or assist, induce, help or join any other person or company in doing any of the above activities; or

      9.2.2    Solicit, recruit or engage the services of any employee, consultant, or provider which render services to, or for the benefit of, Employer or any of Employer's Affiliates for Physician's use or benefit or for any other person's or company's use or benefit, or induce or help to induce any employee, consultant or provider that renders services to, or for the benefit of, Employer or any of Employer's Affiliates to leave for other employment, without Employer's prior written consent.

9.3    **No Running of Covenant During Breach**. With respect to any restrictive covenant which applies after the termination of the Agreement Term, if Physician violates such restrictive covenant and Employer brings legal action for injunctive or other relief, Employer shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of such restrictive covenant. Accordingly, after the termination of the Agreement Term for any reason (including termination), for any time period that Physician is in violation of the restrictive covenants set forth in this Article IX, such time period shall not be included in calculating any such restrictive covenant time period described in this Article IX.

9.4    **Duration and Geographical Limits**. If it shall be determined that the duration or geographical limit of any restriction contained in this Article IX is unenforceable, it is the intention of the parties that such restrictive covenant set forth herein shall not thereby be terminated or void but shall be deemed amended to the extent required to render it valid and enforceable to the greatest extent permissible by the applicable law and public policy.  Such amendment shall apply only with respect to the operation of this Article IX.

9.5    **Injunction**. Physician acknowledges that the restrictions contained in this Article IX are a reasonable and necessary protection of the legitimate business interests of Employer. In the event of any violation of these restrictions, Employer shall be entitled to preliminary and permanent injunctive relief, in addition to any other remedy, and shall be entitled to be  reimbursed by Physician for any attorneys' fees and costs incurred, at all pre-trial,

trial and appellate levels, as a result thereof. Physician waives any requirement that Employer post a surety bond in connection with any attempt to secure equitable relief. Nothing herein contained shall be construed as prohibiting Employer from pursuing any other legal or equitable remedies available to Employer due to a violation of the restrictions set forth in this Article IX.

9.6    **Application of Restrictive Covenant.** The restrictive covenants contained in this Article IX shall be null and void in the event that Employer terminates this Agreement pursuant to Section 6.3 hereof (termination without cause) or Physician terminates this Agreement pursuant to Section 6.2 hereof (termination without cause).

ARTICLE X
FEES

10.1    <u>Fees for Services</u>. Except as otherwise may be provided in Section 3.7, all fees, compensation, monies, and other things of value received or realized as a result of the rendering of medical services by Physician pursuant to this Agreement, shall belong to and be paid and delivered to Employer. Remuneration received by Physician from business activities unrelated to the practice of medicine that do not interfere or conflict with the terms of this Agreement may be retained by Physician, so long as such activity is approved in advance by Employer, and is not performed in the capacity of serving as an employee of Employer.

10.2    <u>Setting of Fees</u>. Employer shall have exclusive authority to determine the fees, or a procedure for establishing the fees, to be charged patients, even though such patients may be treated by Physician in the course of Physician's employment by Employer.

10.3    <u>Power of Attorney</u>. Physician does hereby appoint Employer as Physician's attorney-in-fact to execute, deliver or endorse checks, applications for payment, insurance claim forms or other instruments required or convenient, as determined by Employer in its sole discretion, to fully collect, secure or realize all sums lawfully due to Employer, for services rendered by Physician under this Agreement during the Agreement Term. The power of attorney is coupled with an interest, is irrevocable, and shall survive expiration of termination of this Agreement.

10.4    <u>Billing and Collection</u>. Physician agrees that, during the Agreement Term, Physician shall not bill to or collect from any patient or third party payor any amount for services rendered hereunder. Physician hereby irrevocably assigns and grants to Employer the right to bill and collect from patients or third party payors for all services rendered by Physician hereunder, regardless of the location where any such services may be rendered by Physician. Physician agrees to execute any and all documents deemed necessary or desirable by Employer to carry out the provisions of this section. Unless otherwise agreed by Physician, all billing and collection activities shall be conducted as part of the regular business operations of the Practice. Such procedures shall include, but not be limited to, sending bills, filing insurance claims, and making phone calls.

10.5    <u>Accounting Reports and Review</u>. Employer shall make available to Physician lists of fees charged for particular services for particular payors and shall update these lists on a regular basis as fees and payors change. Employer shall provide to Physician, on a monthly basis, production reports that list the billings attributable to services provided by Physician in connection with provision of such services, such reports to be provided within twenty (20) days after the applicable month to which such reports relate.

ARTICLE XI
LIMITATIONS OF AUTHORITY

11.1    Physician agrees not to enter into any transaction on Employer's behalf without the express written consent of Employer, including, but not limited to, the following actions:

(i)    Pledge the credit of Employer or any of its Affiliates or other employees;

(ii)    Bind Employer under any contract, agreement, note, mortgage or other agreement;

(iii)     Bind, release, or discharge any debt due Employer; or

(iv)     Sell, mortgage, transfer or otherwise dispose of any assets of Employer.

11.2     Physician shall hold Employer harmless from any loss attributable to a violation of this covenant. Notwithstanding anything to the contrary in this Article XI, Physician shall advise and assist Employer in securing and retaining contracts in the name and for the account of Employer with such individuals or entities necessary for the proper and efficient functioning of Employer.

## ARTICLE XII
### NOTICE

12.1     All notices required or permitted to be given under the terms of this Agreement shall be in writing, and shall be effective upon delivery if delivered to the addressee in person, effective three (3) business days after mailing if mailed by certified mail, postage prepared, return receipt requested, or effective the next business day if delivered by overnight courier with charges prepaid, as follows:

If to Employer:     Tom Fucci
                    Chief Operating Officer and Executive Vice President
                    Saint Vincent Health System
                    232 West 25th Street
                    Erie, Pennsylvania  16544

With a copy to:     Jim McNamara
                    Legal Counsel
                    232 West 25th Street
                    Erie, Pennsylvania  16544

If to Physician:    Jay J. Kiessling,  MD
                    1716 12th Street, North West
                    Minot, North Dakota  58701

or to such other address as either party shall have designated for notices to be given to him, her, or it in accordance with this Article.

## ARTICLE XIII
### MISCELLANEOUS

13.1     **Recitals**.  The recitals are true and correct and are incorporated herein in their entirety.

13.2     **Severability**.  If any provision of this Agreement shall be held invalid or unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect.

13.3     **Litigation**.  In the event that a dispute between the parties hereto results in litigation or in an arbitration proceeding, each party shall be responsible for its, his, or her own attorneys' fees and all other costs of such action or proceeding.

13.4     **Assignment**.  Employer may assign all of its rights and duties under this Agreement without recourse to any Affiliate or to any entity that purchases all or substantially all of the operating assets of Employer, provided that any such assignment shall not abrogate any compensation of Physician.  Physician may not assign his/her rights or duties hereunder without the prior written consent of Employer.  Any such assignment by Physician without the prior

written consent of Employer shall be null and void. This Agreement may otherwise be assigned upon the written agreement of both parties.

13.5     **Governing Law and Venue.** This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania. Any action or claim arising from, under or pursuant to this Agreement shall be brought in the courts, state or federal, within the Commonwealth of Pennsylvania, and the parties expressly waive the right to bring any legal action or claim in any other court. The parties hereto hereby consent to venue in any state or federal court within the Commonwealth of Pennsylvania having jurisdiction over the County for all purposes in connection with any action or proceeding commenced between the parties hereto in connection with or arising from this Agreement.

13.6     **Arbitration.** Except as to the provisions contained in Articles VIII and IX, the exclusive jurisdiction of which shall rest with a court of competent jurisdiction in the Commonwealth of Pennsylvania, any controversy or claim arising out of or related to this Agreement, or any breach thereof, shall be settled by arbitration held in Erie County, Pennsylvania, in accordance with the rules and procedures of alternative dispute resolution and arbitration established by the Alternative Dispute Resolution Service of the American Health Lawyers Association ("AHLA"), and judgment upon any award rendered may be entered in any court having jurisdiction thereof. Such arbitration shall be conducted before a single AHLA arbitrator selected jointly by the parties, or in the event the parties are unable to agree, designated by the AHLA.

13.7     **Waiver.** Any waiver by either party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other provision hereof and shall not be effective at all unless in writing. A waiver of any of the terms and conditions hereof shall not be construed as a general waiver by either party, and such waiving party shall be free to reinstate any such term or condition, with or without notice to the other party.

13.8     **Entire Agreement/Amendment.** This Agreement contains the entire agreement between the parties hereto. No change, addition, or amendment shall be made except by written agreement executed by both of the parties hereto.

13.9     **Survival.** The provisions of this Agreement, including but not limited to Articles VIII and IX, shall survive the termination of Physician's relationship with Employer and the assignment of this Agreement by Employer to any successor or assign.

13.10     **Confidentiality.** Except as otherwise required by law, Physician hereby agrees to hold in the strictest confidence all of the terms and conditions set forth herein; provided, however, that Physician may disclose the terms hereof to his/her attorneys, accountants and other financial and legal advisors as reasonably necessary.

13.11     **Expenses.** Each party to this Agreement shall pay its own costs and expenses in connection with the transaction contemplated hereby.

13.12     **Counterparts.** This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

13.13     **Binding Effect.** This Agreement shall not become effective or legally binding upon either party until signed by both Employer and Physician, and approved by Saint Vincent Health System's Finance Committee and Legal Counsel.

EXECUTION COPY

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

WITNESS:

_Aueann Wiest_
_____

_____

PHYSICIAN:

_Jay Kiessling Jay Kiessling_
_____
Jay J. Kiessling, MD                          (Signature)

_156 46 1471   156 46 1471_
SSN#

EMPLOYER:

By: _____
Tom Fucci
Chief Operating Officer and Executive Vice President
Saint Vincent Health System

EXECUTION COPY

EXHIBIT "A"
PHYSICIAN COMPENSATION

A.      **Compensation.**

Provided that the terms and conditions set forth in the Agreement are met, Physician shall during the period beginning with the Effective Date through the first eighteen (18) month anniversary thereof, receive a minimum guaranteed compensation of $525,000 per year, in accordance with Employer's general payroll policies. The annual aggregate compensation will be comprised of the components in Section B and Exhibit C.

In the event Physician's medical staff privileges at Saint Vincent Health Center are placed on potential suspension due to Physician's failure to comply with such facility's professional requirements concerning maintenance of medical records, Employer shall provide Physician with notice of such suspension, and Physician shall remedy such potential suspension prior to actual suspension. If Physician fails to remedy any such potential suspension of medical staff privileges, Physician Compensation hereunder shall be reduced by one day's Salary per day of such suspension. For repeated violations of either Saint Vincent Health Center or Employer's medical records standards and policies, Physician may be subject to suspension of duties and/or reduction of compensation upon the sole discretion of the Chief Medical Officer, until Physician has remedied said deficiencies. Physician shall be personally and solely responsible for any fines levied by the Medical Staff due to failure to comply with Medical Staff policies.

Payroll policies as of the execution of this Agreement include a 2-week payroll cycle. In the event (a) Physician files and is approved for unpaid leave under The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., or (b) Physician begins to receive short- or long-term disability insurance payments through Employer's disability insurance coverage, Physician's monthly "draw" shall be discontinued effective as of the end of the month during which such leave is approved or disability payments are made and shall be reinstated as of the first payroll period after Physician's return to employment hereunder.

B.   **Aggregate Compensation**

The aggregate compensation will be the sum of the following plan components:

(I)      Clinical Revenue Component:          57% to 63% of net revenue depending on
                                               net revenue tier achieved
(II)     Quality Component:                    5% of net revenue
(III)    Administrative Component:             5% of net revenue

I.   **Clinical Revenue Component.**

The Clinical Revenue Component (percentage of net revenue) will be calculated and based on the following:

| Tier | Annual Net Revenue | Clinical Revenue Component % of Net Revenue |
|------|--------------------|---------------------------------------------|
| 1 | <$ 454,768 | 57% |
| 2 | $454,769 - $793,858 | 59% |
| 3 | $ 793,859 - $997,804 | 61% |
|   | > $ 997,805 | 63% |

Sufficient monthly and quarterly reporting of net revenue data will be made available and reviewed with the physician.

## II. Clinical Quality Component

The Clinical Quality Component will be calculated based on the following:

(a)    At least sixty (60) days prior to the beginning of each contract year, the Chief Medical Officer of the Health System or his or her designee will meet and agree on specific quality metrics and measures for the coming year.

(b)    The measures can be either multiple quality metrics or a single metric with graduated payments based on the degree of performance of the metric.

(c)    The measure(s) will be uniformly applied across all physicians in the Practice.

(d)    A performance-based percentage scale will be determined for each metric up to a maximum award of five percent (5%) of net revenue.

## III. Administrative Component

The administrative component will be calculated as follows:

(a)    At least sixty (60) days prior to the beginning of each contact year, the Physician and the Chief Medical Officer of the Health System or his or her designee will meet and agree on specific administrative metrics and measures for the coming year.

(b)    The measures can be either multiple administrative metrics or a single metric with graduated payments based on the degree of performance of the metric.

(c)    The measure(s) will be uniformly applied across all physicians in the Practice.

(d)    A performance-based percentage scale will be determined for each metric up to a maximum award of five percent (5%) of net revenue.

## C.  Aggregate Compensation Plan Administration

(a)    **Salary Draw.**  A salary draw will be established for Physician up to the total amount of compensation earned in the prior plan year.  This salary draw will be paid to Physician in bi-weekly installments for payroll administration.

(b)    **Net Revenue Adjustment.**  On a monthly basis Physician will receive a summary of compensation plan earnings based on net revenue.  In addition Physician will receive monthly billing, collection and net revenue reports that are sufficient to understand their current performance and any collection issues that may be occurring within the practice.  If a billing issue arose such that collections were not received, and an actual write-off was incurred based on the failure of the billing system, then such collections will be imputed and added to the net revenue for physician compensation calculations.  If however, collections were not received and a write-off was incurred due to the failure of the physician to follow established policy, for example granting of professional courtesy, then net revenue for physician compensation will be imputed downward such that the Medical Group overhead recovery for such claim is achieved.

(c)    **Plan Reconciliation Calculation.**  On a quarterly basis a compensation plan tentative settlement calculation will be performed.

(d)    **Compensation in Excess of Salary Draw.**  If calculated compensation earned is greater than the salary draw paid, the difference will be paid for that quarter at the next regular pay cycle.

(e)    **Compensation less than Salary Draw – Deficit Carryover.**  If calculated compensation earned is less than the salary draw paid then the physician may elect to carry such deficit forward for one

quarter as it is anticipated that vacation and/or CME may impact the net revenue in any given quarter.

(f) **Compensation Less than Salary Draw – Salary Draw Adjustment.** If calculated compensation earned is less than the draw paid for two successive quarters then the physician shall meet with the Chief Medical Officer, or his designee, to establish a revised salary draw such that no further deficits exist by the end of the next quarter.

(g) **Availability of Quality and Administrative Metric Performance Data.** For the first and second quarter of the compensation plan year, while data is being collected with respect to the quality and administrative components, the physician shall be credited with the full amount of the incentive. Beginning in the third quarter, based on data analysis, the performance of the physician in meeting the metrics for these incentives will be reflected in the calculation of the total compensation.

(h) **Medicaid / Charity Care Adjustments.** As part of its mission, Employer is committed to provide care to all patients regardless of their ability to pay. Employer recognizes that Physician's net revenue will be adversely affected by the provision of services in furtherance of this mission. As recognition for the provision of services to underinsured patients, Employer shall adjust or "mark-up" Medicaid net revenue by thereby adjusting net revenue 36.7% compensate for inadequate Medicaid payments. In recognition of the provision of services to uninsured patients, if Physician's charity care gross charges are greater than one (1) percent of total gross charges, such excess shall be applied to Physician's net revenue at the average net revenue rate.

| | FULL TIME PROVIDER (Over 1820 hours/year) | PART TIME PROVIDER (1000 to 1820 hours/year) | PART TIME PROVIDER (Under 1000 hours/year) |
|---|---|---|---|
| **MEDICAL INSURANCE (including Pharmacy benefits)** | Highmark. Health System pays a portion of monthly premium rate based on contracted hours. | Highmark. Health System pays a portion of monthly premium rate based on contracted hours. | Highmark. Health System pays a portion of monthly premium rate based on contracted hours. |
| **DENTAL INSURANCE** | Benefit Administrators, Inc. (BAI). Health System pays a portion of monthly expense rate based on contracted hours. | Benefit Administrators, Inc. (BAI). Health System pays a portion of monthly expense rate based on contracted hours. | Benefit Administrators, Inc. (BAI). Health System pays a portion of monthly expense rate based on contracted hours. |
| **VOLUNTARY VISION INSURANCE** | Physicians can purchase vision coverage through NVA. | Physicians can purchase vision coverage through NVA. | Not eligible |
| **FLEXIBLE BENEFITS PLAN** | Pay out of pocket expenses with pre-tax dollars:<br>1. Medical & Dental premium<br>2. Medical, Dental, & Vision expenses<br>3. Day Care expenses | Pay out of pocket expenses with pre-tax dollars:<br>1. Medical & Dental premium<br>2. Medical, Dental, & Vision expenses<br>3. Day Care expenses | Not eligible |
| **PAID TIME OFF (PTO) PTO time includes: Vacation, holiday, CME and personal time.** | Please refer to your contract. | Please refer to your contract. | Not eligible, unless otherwise stipulated in contract. |
| **SHORT TERM DISABILITY** | The first 2 weeks are deducted from PTO hours, if available.<br>Next 12 weeks SVHS pays @ 80%<br>Next 12 weeks SVHS pays @ 60%<br>Additional voluntary short term disability coverage is available through The Standard. Contact Human Resources for rates. | Not eligible | Not eligible |
| **FAMILY MEDICAL LEAVE ACT** | 12 weeks family & medical leave (paid if benefits are available) after 1 year of service. | 12 weeks family & medical leave (paid if benefits are available) after 1 year of service. | Not eligible |
| **LONG TERM DISABILITY** | Sun Life Financial. Eligible after 2 months of employment. After 180 days of Total Disability, monthly benefit during disability up to age 65 ($10,000 maximum monthly benefit). | Not eligible | Not eligible |

EXECUTION COPY

| | FULL TIME PROVIDER (Over 1820 hours/year) | PART TIME PROVIDER (1000 to 1820 hours/year) | PART TIME PROVIDER (Under 1000 hours/year) |
|---|---|---|---|
| LIFE INSURANCE | Reliance Standard. Term life insurance equal to $500,000. Additional term life insurance available. Contact Vicary Insurance Agency for more information at 814-459-3407. | Reliance Standard Term life insurance equal to $250,000. Additional term life insurance available. Contact Vicary Insurance Agency for more information at 814-459-3407. | Not eligible |
| VOLUNTARY INSURANCE | Physicians can purchase additional insurance coverage through Farmington 1-800-621-0067, including:<br>• Permanent life insurance<br>• Critical Illness<br>• Accident | Physicians can purchase additional insurance coverage through Farmington 1-800-621-0067, including:<br>• Permanent life insurance<br>• Critical Illness<br>• Accident | Not eligible |
| DEFINED CONTRIBUTION PENSION PLAN | Employer Contribution Schedule<br>3%   <10 years of service<br>6%   At least 10, <20<br>7%   At least 20, <25<br>8%   25 or more years<br>Participation after 1 year of service 100% Vested after 5 years of service (80% after 4, 60% after 3, 40% after 2, 20% after 1)<br>Investment options with Diversified Investment Advisors. | Employer Contribution Schedule<br>3%   <10 years of service<br>6%   At least 10, <20<br>7%   At least 20, <25<br>8%   25 or more years<br>Participation after 1 years of service 100% Vested after 5 years of service (80% after 4, 60% after 3, 40% after 2, 20% after 1)<br>Investment options with Diversified Investment Advisors. | Not eligible |
| TAX SHELTER ANNUITY | 403(b) Plan. Defer federal income tax on contributions up to $17,000/year (2012 limit). $22,500 for participants 50 years or older. Investment options with Diversified Investment Advisors. | 403(b) Plan. Defer federal income tax on contributions up to $17,000/year (2012 limit). $22,500 for participants 50 years or older. Investment options with Diversified Investment Advisors. | 403(b) Plan. Defer federal income tax on contributions up to $17,000/year (2012 limit). $22,500 for participants 50 years or older. Investment options with Diversified Investment Advisors. |
| 457(b) TAX DEFERRED SAVINGS PLAN | Voluntary salary deferral up to $17,000 in 2012. Investment options offered through Northwest Savings. | Voluntary salary deferral up to $17,000 in 2012. Investment options offered through Northwest Savings. | Voluntary salary deferral up to $17,000 in 2012. Investment options offered through Northwest Savings. |

EXECUTION COPY

| | FULL TIME PROVIDER (Over 1820 hours/year) | PART TIME PROVIDER (1000 to 1820 hours/year) | PART TIME PROVIDER (Under 1000 hours/year) |
|---|---|---|---|
| LICENSURE & DEA REGISTRATION | Health system pays for PA licensure and DEA Registration. | Health system pays for PA licensure and DEA Registration prorated by actual scheduled hours. | Health system pays for PA licensure and DEA Registration prorated by actual scheduled hours. |

<u>EXHIBIT C</u>

PROMISSORY NOTE

$25,000.00                                                    Due Date:   June 30, 2015

        On or before June 30, 2015 , for value received, the undersigned Maker promises to pay to the order of Saint Vincent Medical Educational and Research Institute, Inc. ("**Employer**") the sum of  $25,000 at the office of the President of the Employer, 232 West 25 Street, Erie PA  16544, or at such other place as the holder hereof may direct in writing, with interest thereon, at an annual rate equal to the prime rate reported in the Wall Street Journal on the Practice Start Date, plus one percent (1%) until paid, with attorneys' fees and costs of collection, and without relief from valuation and appraisement laws.

        The Maker waives demand, presentment, protest, notice of protest, and notice of nonpayment or dishonor of this Note, and consents to extensions of time of payment of this Note.

        No delay or omission on the part of the holder hereof in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the holder hereof of any right or remedy shall preclude other or further exercise thereof or of any other right or remedy.

        This Note is subject to forgiveness as described in a certain Physician Employment Agreement dated _____ and entered into by and between the Maker and Employer.

        Signed and delivered at Erie, Pennsylvania, this ____day of _____, 2012

**Maker:**

Signature: _____

Address: _____